UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**STEPHEN D. GILL and**
**MICHELLE TOBIN GILL,**                                    Chapter 7
    Debtors                                              Case No. 09-15976-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**STEPHEN D. GILL and**
**MICHELLE TOBIN GILL,**
    Plaintiffs
v.                                                          Adv. P. No. 13-1111
**NAVY FEDERAL CREDIT UNION,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the Defendant's Motion to Dismiss Counts III and IV of the Complaint filed by the Plaintiffs, Stephen D. Gill and Michelle Tobin Gill. Through their Complaint, the Plaintiffs allege, among other things, that the Defendant, Navy Federal Credit Union ("NFCU"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. Specifically, with respect to Count III, the Plaintiffs allege that the Defendant is a "debt collector" within the meaning of the FDCPA and that its "acts or omissions" in sending monthly or quarterly statements and issuing electronic monthly or quarterly statements to

1

Plaintiffs 1) "constituted communications designed to convey information regarding a debt directly or indirectly under 15 U.S.C. § 1692a(2);" 2) "constituted false representations of the character, amount or legal status of any debt under 15 U.S.C. § 1692e(2);"and 3) "constituted false representations of the character, amount or legal status of any debt under 15 U.S.C. § 1692e(2)" in violation of 15 U.S.C. § 1692f(1).

With respect to Count IV, the Plaintiffs allege that the Defendant's acts or omissions, in continuing to furnish false information to a consumer reporting agency, namely Mr. Gill's lateness in making post-petition and post-discharge payments of a discharged debt, was a violation of the FCRA and that the Defendant's acts or omissions in continuing to furnish false information to a consumer reporting agency, after the violation was reported to NFCU, was a willful violation of the FCRA, entitling them to damages under 15 U.S.C. §§ 1681n(A)(1)(a) and 1681o(a)(1), punitive damages under 15 U.S.C. § 1681n(a)(2), and attorneys' fees and costs under 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(1). In support of their allegations, the Plaintiffs attached representative statements, both bearing the logo of NFCU.

The Defendant moved to dismiss Count III on several grounds, including that it was not acting as a "debt collector" for purposes of the FDCPA. It moved to dismiss Count IV on the ground that there is no private right of action under the FCRA pertinent to the Debtors' allegations.

The Defendant submitted a brief in support of its Motion to Dismiss; the Plaintiffs submitted a brief in support of their Objection to the Motion to Dismiss. The Court heard

the Defendant's Motion to Dismiss on June 14, 2013 and took the Motion to Dismiss under advisement with respect to Counts III and IV of the Plaintiffs' six-count complaint.

## II. THE PLAINTIFFS' ALLEGATIONS

The Plaintiffs filed a Chapter 7 bankruptcy petition on June 29, 2009; the Defendant was notified of the bankruptcy filing on or about July 8, 2009. The Plaintiffs filed their Schedules of assets and liabilities on August 1, 2009. On Schedule A- Real Property, they listed real estate located at 1249 Cathleen Drive, Gulf Breeze, Florida, noting their intention to surrender the property. On Schedule D-Creditors Holding Secured Claims, the Plaintiffs listed the Defendant as the holder of first and second mortgages secured by the Florida property and as the holder of a lien on a 2008 Toyota Sienna minivan. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Plaintiffs listed the Defendant as the holder of a claim in the sum of $15,669.07 relating to a revolving credit agreement, and as the holder of a claim in the sum of $12,793 relating to a line of credit. On their Statement of Intention, the Plaintiffs again indicated their intention to surrender the Florida Property.

On August 17, 2009, the Chapter 7 Trustee filed a Report of No Distribution.

On October 1, 2009, the Defendant filed a Motion for Relief from Stay, seeking to foreclose its first mortgage on the Florida property, which was in the original principal amount of $163,000. The Plaintiffs filed a Limited Opposition to the Motion in which they stated that

> [t]he purpose of the opposition is to insure that any order entered by the Court with respect to this motion will be limited to the liquidation by the moving party of its collateral. Any remedy which the moving party may

3

> seek with regard to its deficiency, if any, to be realized in the future is subject to a discharge of the obligations secured by the moving party's mortgage."

On October 16, 2009, the Court entered an order of discharge. Four days later, on October 20, 2009, this Court entered an order granting the Defendant relief from the automatic stay.

On October 28, 2009, the parties filed a Reaffirmation Agreement with respect to their Toyota, which was executed by both parties after the entry of the discharge. The Court, on November 5, 2009, disapproved the Reaffirmation Agreement for failure to comply with 11 U.S.C. § 524(c)(1). Eleven days later, the Court entered an order discharging the Chapter 7 Trustee and closing the Plaintiffs' case. The Plaintiffs moved to reopen their Chapter 7 case on April 10, 2013. The Court granted the Motion to Reopen on April 12, 2013. The Debtor's commenced the instant adversary proceeding against NFCU the same day.

**III. DISCUSSION**

A. Dismissal Standard

In determining a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012, the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Sullivan v. Credit Control Servs., Inc., 745 F.Supp.2d 2, 6 (D. Mass. 2010) (citing Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir.2007), and Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). To successfully withstand a motion to dismiss, the plaintiff must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). According to the Supreme Court, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556).

    B. Count III

The FDCPA defines "debt collector" as any individual in a business whose "principal purpose . . . is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6). According to the United States Court of Appeals for the First Circuit in Chiang v. Verizon New England, Inc., 595 F.3d 26 (1st Cir. 2010),

> Creditors collecting on their own accounts are generally excluded from the statute's reach. Id. § 1692a(6)(F)(ii); cf. Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 22 n. 4 (1st Cir. 2002). There is, however, a limited exception for "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." Id. § 1692a(6). The exception was designed to combat "flat-rating," whereby creditors attempt to intimidate debtors by creating the false impression that a third party is participating in the debt collection process. See White v. Goodman, 200 F.3d 1016, 1017 (7th Cir. 2000).

Chiang, 595 F.3d at 41-42.

The Court shall enter an order dismissing Count III. The Plaintiffs' Complaint is devoid of any allegation that would permit this Court to find that the Plaintiffs stated a plausible claim that the Defendant is a "debt collector" within the meaning of the FDCPA

5

or that the exception applies. The exhibits upon which the Plaintiffs rely clearly and conspicuously identify the Defendant as the entity which sent monthly and quarterly statements to the Plaintiffs.

C. Count IV

In addition to the facts set forth above which can be gleaned from the Plaintiffs' bankruptcy case, the Plaintiffs in support of Count IV allege, in pertinent part, the following:

> 29. At the time the Plaintiffs filed their bankruptcy petition, they were current with their first and second mortgage payments, but had moved to Massachusetts and were going to surrender the Plaintiffs' Property.
>
> ***
>
> 40. The Plaintiffs never reaffirmed the NFCU First Note and never reaffirmed the NFCU Second Note, as it was always their intent to surrender the Plaintiffs' Property.
>
> 41. Despite the fact that the Defendant cannot collect any amount of purported deficiency, the Defendant continues to furnish information to Consumer Reporting Agencies that Mr. Gill was late with the payments post-filing of the bankruptcy and post discharge, of the NFCU Second Note that has been duly discharged in bankruptcy.
>
> 42. On information and belief, the Plaintiffs reasonably believe that Defendant's continual inaccurate and improper reporting, of alleged missed NFCU Second Note payments for the period October 2009, November 2009, and December 2009, resulted in Mr. Gill's credit score dropping from 670 in November, 2010 to a score of 593 in the spring of 2011.
>
> ***
>
> 44. On information and belief, despite Mr. Gill and Attorney Sauer's request to NFCU's General Counsel, the Defendant has failed to correct the information it was providing the Consumer Reporting Agencies claiming

payments regarding the second mortgage were late and continues [sic] to provide the Consumer Reporting Agencies with false and misleading information.

(footnote omitted).[1] As noted above, the Plaintiffs allege that the Defendant violated the FCRA by continuing to furnish false information to a credit reporting agency. Notably, the Plaintiffs did not reference a particular section of the FCRA.

In Chiang v. Verizon New England, Inc., 595 F.3d 26 (1st Cir. 2010), the First Circuit considered the issue of "whether § 1681s–2(b) of the FCRA provides for a private right of action and the standards for asserting a claim under that section." Joining other circuits, it recognized that "under § 1681s–2(b) there is a private cause of action, that the investigation must be reasonable, that this test is objective, and that plaintiff bears the burden of proof," adding

> We further hold that a § 1681s–2(b) claim requires plaintiff to show actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover. However, we reject the defendant's argument that the restriction in an earlier section of the statute, id. § 1681s–2(a)(1)(D), which precludes reliance on a plaintiff's allegations for the purposes of that subsection, applies to a plaintiff's own assertions in support of his claim under § 1681s–2(b).

Chiang, 595 F.3d. at 29-30.

In Chiang, the First Circuit set forth the background leading to the enactment of the FCRA. The court stated:

---

[1] In a footnote in paragraph 41, the Plaintiffs alleged that "[t]he Defendant reported that Mr. Gill was late with the October, 2009, November, 2009 and December,2009 payments, 30-59 days late as of August, 2009, 60-89 days late as of September, 2009 and as recently as March 18, 2013 reported that Mr. Gill was past due 120 days."

> Congress, recognizing abuses in the burgeoning credit reporting industry, originally "enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007); *see also* 7 Kenneth M. Lapine et al., Banking Law § 153.02, at 153–5 to –7(2009 ed.). The FCRA imposes obligations on CRAs [credit reporting agencies] and users of consumer information and provides for enforcement by various federal agencies. *See, e.g.*, 15 U.S.C. § 1681s. The act also expressly creates a private cause of action, enabling consumer suits for willful or negligent noncompliance with its requirements. Id. § 1681n- o. *See generally* Lapine et al., supra § 153.03, at 153–11 to –12; id. § 153.09, at 153–128. Plaintiffs may recover actual damages for negligent violations, 15 U.S.C. § 1681 o(a)(1), and actual or statutory and punitive damages for willful ones, id. § 1681n(a)(1)-(2); Safeco, 551 U.S. at 53, 127 S.Ct. 2201. There is no basis for any claim of willful violations on this record, so only actual damages are at issue.
>
> In 1996, Congress substantially amended the FCRA, and those amendments are involved here. *See, e.g.*, H.R.Rep. No. 108–396, at 1753–54 (2003) (Conf. Rep.). Among the changes adopted was a new section governing the responsibilities of so-called "furnishers" of information to CRAs. Consumer Credit Reporting Reform Act of 1996, Pub.L. No. 104–208, ch. 1, sec. 2413, § 623, 110 Stat. 3009–426, 3009–447 to –449 (codified as amended at 15 U.S.C. § 1681s–2). This addition was intended to close an identified "gap in the FCRA's coverage," whereby even dutiful investigations of consumer disputes by CRAs could be frustrated by furnishers' irresponsible verification of inaccurate information, without legal consequence to the furnishers. S.Rep. No. 103–209, at 6 (1993). . . .

Id. at 34 (footnote omitted). The First Circuit added:

> Under § 1681s–2, furnishers may not provide inaccurate information to consumer reporting agencies, 15 U.S.C. § 1681s–2(a)(1), and also have specific duties in the event of a dispute over furnished information, id. § 1681s–2(b). Only the second of these duties is subject to a private cause of action. . . .
>
> Section 1681s–2(a) prohibits any person from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." Id. § 1681s–2(a)(1)(A). Congress expressly limited furnishers' liability under § 1681s–2(a) by prohibiting private suits for violations of that portion of the

8

statute. Id. § 1681s–2(c)(1).

> Section 1681s–2(b), the provision at issue in this case, outlines a furnisher's duties when a consumer disputes the completeness or accuracy of information in their credit report. Under the FCRA, consumers generally notify CRAs of such disputes. *See* id. § 1681i(a)(1). Although a consumer may dispute credit information directly to a furnisher, . . . the consumer has no private right of action if the furnisher does not reasonably investigate the consumer's claim after direct notification.

Id. at 35. The First Circuit further explained:

> The FCRA was recently amended to allow consumers to notify furnishers of disputes directly. *See* § 1681s–2(a)(8); Lapine et al., *supra* § 153.06, at 153–95. However, there is no private cause of action for failure to properly investigate such a dispute, 15 U.S.C. § 1681s–2(c)(1) . . . . A notice of disputed information provided directly by the consumer to a furnisher does not trigger a furnisher's duties under § 1681s–2(b). *See, e.g.*, Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir.2009). . . .

Chiang, 595 F.3d at 35 n.8. *See also* Longman v. Wachovia Bank, N.A., 702 F.3d 148, 151 (2d 2012); Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 615-16 (6th Cir. 2012).[2] According to

---

[2] The Sixth Circuit stated:

> FCRA, then, unquestionably creates a private right of action. §§ 1681n, 1681 o. At issue is whether that private right of action extends to cover violations of § 1681s–2. We conclude that consumers may rely on §§ 1681n and 1681 o to enforce some, but not all, subsections of § 1681s–2. This is because § 1681s–2(c) expressly precludes consumers from enforcing the requirement that furnishers, under § 1681s–2(a), initially provide complete and accurate consumer information to a CRA. § 1681s–2(c) (stating that "sections 1681n and 1681 o of this title do not apply to any violation of subsection (a) of this section"); *see also* § 1681s–2(d) (reserving enforcement of § 1681s–2(a) to "the Federal agencies and officials and the State officials identified in section § 1681s of this title"). *In light of § 1681s–2(c)'s express limits, consumers may step in to enforce their rights only after a furnisher has received proper notice of a dispute from a CRA.* Inasmuch as CRAs need not forward frivolous disputes along to furnishers, see § 1681i(a)(3), this statutory framework provides consumers with a private remedy against

9

the court,

> When a customer disputes credit information to a CRA, the CRA must advise the furnisher of that data that a dispute exists and provide the furnisher with "all relevant information regarding the dispute that the agency has received from the consumer." Id. § 1681i(a)(2)(A). Once notified by a CRA, a furnisher must
>
>> (A) conduct an investigation with respect to the disputed information;
>>
>> (B) review all relevant information provided by the consumer reporting agency. . . ;
>>
>> (C) report the results of the investigation to the consumer reporting agency;
>>
>> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>>
>> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation ..., for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly — (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.
>
> Id. § 1681s–2(b)(1).

Chiang, 595 F.3d at 35-36.  *See also* Barrepski v. Capital One Bank, 439 Fed. App'x 11, 12

(1st Cir. 2011). The First Circuit determined that a private right of action existed for claims

---

> negligent or willful misconduct by a furnisher, while it simultaneously protects furnishers from answering frivolous consumer disputes.

696 F.3d at 615-16.

under § 1681-2(b)(1), but not for claims under § 1861(2)(a), which prohibits furnishers from providing inaccurate information to consumer reporting agencies. Id. at 36.

Because the Plaintiffs' Complaint is devoid of any references to specific subsection of 15 U.S.C. § 1681 or any allegations that the Plaintiffs contacted credit reporting agencies before contacting the Defendant, the Court concludes that Count IV of the Plaintiffs' Complaint fails to state a plausible claim for a private right of action under the FCRA. *See* Chiang, 595 F.3d at 35 n.8.

## IV. CONCLUSION

In view of the foregoing, the Court shall grant the Defendant's Motion to Dismiss in part. The Court dismisses Counts III and IV of the Plaintiffs' Complaint.[3]

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: July 8, 2013

---

[3] Pursuant to the order of June 14, 2013, the Court denied the Defendant's Motion to Dismiss Counts I, II and V and directed the Plaintiffs to file an amended Complaint as to those counts.